**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DANIEL GALMAN, JR.,** | Civ. No. 13-7800 (KM)(MAH) |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **SYSCO FOOD SERVICES OF METRO NEW YORK, LLC; SYSCO CORPORATION RETIREMENT FUND; SHELLY BUDHAR, JOHN DOES 1-10; JANE DOES 1-10; and ABC CORPORATIONS A THROUGH Z,** | |
| **Defendants.** | |

The plaintiff, Daniel Galman, Jr., participated in his employer's retirement plan. Before he retired, Galman asked the employer's human resources manager to give him an estimate of the lump sum pension benefit he would receive upon his retirement. The employer allegedly failed to provide that estimate. Galman, who is African American, says he later learned that certain Caucasian retirees received higher lump sum pension payments than he did.

Galman filed this action against his employer, his employer's retirement fund, and a human resources manager, alleging breach of fiduciary duties and racial discrimination. The defendants have now filed a motion to dismiss the complaint. Their motion will be granted as to both counts of the Complaint, without prejudice to the filing of an amended complaint within 30 days.

1

## Background

For purposes of this motion to dismiss, the factual allegations of the complaint are assumed to be true.

Galman worked for 30 years as a warehouseman for Sysco Food Services of Metro New York, LLC ("Sysco"), and its predecessor. (Compl.[1] ¶ 11) He contributed to the Sysco Corporation Retirement Fund (the "Fund"), as well as a predecessor union fund. (Compl. ¶ 31-32). The Fund was controlled by the Sysco Corporation Retirement Plan (the "Plan").

In 2012, Galman "requested information about what his lump sum retirement payment would be." (Compl. ¶ 34). Galman also inquired about a 6% penalty that had been assessed against employee accounts. (Compl. ¶¶ 17, 24, 34). He directed those requests for information primarily to defendant Shelly Budhar, a human resources manager, but he also refers to making requests of "Sysco" generally. (Compl. ¶¶ 21, 24, 34, 35, 38). Budhar and Sysco did not furnish him with the information he requested. (Compl. ¶ 26).

Galman retired on September 24, 2012. (Compl. ¶ 19) He received his lump sum pension check in October 2012 (Compl. ¶ 23) or December 2012 (Compl. ¶ 36).

After he retired, Galman somehow "learned that two Caucasian employees with similar service to Sysco as he had received substantially higher amounts of money in their pension lump sum payments." (Compl. ¶ 26).

Galman's complaint does not state whether he brought his complaints to any federal or state administrative agency, such as the EEOC or the New Jersey Division on Civil Rights. He did, however, file suit in this Court. His Complaint names three defendants: Sysco, Budhar, and the Fund. It contains two counts: The First Count alleges that the defendants failed to provide

---

[1] Citations to the record will be abbreviated as follows:

"Compl." – Complaint and Jury Demand, Dkt. No. 1.
"Mot." – Memorandum of Law in Support of Defendants'...Motion to Dismiss Plaintiff's Complaint, Dkt. No. 7.
"Opp." — Plaintiff's Brief in Opposition to the Motion to Dismiss, Dkt. No. 12-1.

Galman with the information he requested, thereby breaching their fiduciary duties by violating ERISA. The Second Count alleges that the defendants administered their pension plan in a manner that discriminated on the basis of race, in violation of the New Jersey Law Against Discrimination.[2]

The defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011).

From the seminal modern cases of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Third Circuit has extracted a three-step process for reviewing a complaint:

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps. First, we outline the elements a plaintiff must plead to a state a claim for relief. *See* [*Iqbal*, 556 U.S.] at 675; *Argueta*, 643 F.3d at 73. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

*Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). The complaint's allegations must be factual, not conclusory, and they must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

---

[2]     One other employee of Sysco, represented by the same counsel, has filed a complaint in this district raising similar allegations of race discrimination and failure to provide information. *See Brown v. Sysco Food Services of Metro New York LLC et al.*, No. 14-cv-0474 (D.N.J.) (Linares, J.). That case was dismissed, and is currently on appeal. *See Brown v. Sysco Food Services of Metro New York LLC et al.*, No. 14-4536 (3d Cir.).

## Discussion

The First Count, Galman's claim for breach of fiduciary duty, will be dismissed. The complaint does not allege that Galman's request for information was in writing, a prerequisite to liability under ERISA. *See* 29 U.S.C. § 1025(a)(1)(A) & (B)(ii). Galman has also failed to allege or establish that the named defendants —Sysco, the Fund, and Budhar—are fiduciaries under ERISA. The Second Count, Galman's claim of discrimination under the NJLAD, will be dismissed because it fails to state a claim.

### I.      First Count - Breach of fiduciary duty

In Count 1, the underlying grievance is alleged clearly enough: Galman requested important information about his retirement benefits, but the defendants failed to provide it. The cause of action is entitled "Breach of Fiduciary Duty By Violation of the Employee Retirement Income Security Act."

ERISA is the only basis for this Complaint's being in federal court at all. The claim is most naturally seen as one for breach of the statutory obligation under ERISA to supply certain information to plan participants. *See* 29 U.S.C. §§ 1132(c)(1)(A) & (B), 1025(a). Some of the language in the First Count seems to suggest a more general claim of breach of fiduciary duty. (*See* Compl. ¶ 41 ("Sysco breached their fiduciary duty with regard to the management of and information disclosure to Plaintiff with regard to Plaintiff's pension.")). That may be just an alternative formulation of the statutory ERISA claim. Either way, however, Galman's complaint does not state a claim for relief.

### A.      Failure to provide information under 29 U.S.C. § 1132(c)(1)

Section 502 of ERISA provides for a private cause of action where a plan administrator fails to supply beneficiaries with certain required information:

> (1) Any administrator (A) who fails to meet the requirements of ... section 1025(a) of this title with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to

4

the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1). Galman does not get any more specific than identifying ERISA as the source of the disclosure obligation, but the language of the complaint suggests that he relies on 29 U.S.C. § 1025(a). (*See* Compl. ¶ 39.) Section 1025(a) requires an administrator to "furnish a pension benefit statement" to a plan participant or beneficiary "upon written request."[3] That pension benefit statement must include the total benefits accrued, including the total nonforfeitable pension benefit.

---

[3]

> (a) Requirements to provide pension benefit statements
> (1) Requirements
> (A) Individual account plan
> The administrator of an individual account plan (other than a one-participant retirement plan described in section 1021 (i)(8)(B)of this title) shall furnish a pension benefit statement—
> (i) at least once each calendar quarter to a participant or beneficiary who has the right to direct the investment of assets in his or her account under the plan,
> (ii) at least once each calendar year to a participant or beneficiary who has his or her own account under the plan but does not have the right to direct the investment of assets in that account, and
> (iii) upon written request to a plan beneficiary not described in clause (i) or (ii).
> (B) Defined benefit plan
> The administrator of a defined benefit plan (other than a one-participant retirement plan described in section 1021 (i)(8)(B) of this title) shall furnish a pension benefit statement—
> (i) at least once every 3 years to each participant with a nonforfeitable accrued benefit and who is employed by the employer maintaining the plan at the time the statement is to be furnished, and
> (ii) to a participant or beneficiary of the plan upon written request.

29 U.S.C. § 1025(a). Galman's plan is a defined benefit plan, subject to subsection (1)(B).

5

I will assume without deciding that the lump sum benefit information Galman requested is the kind of information a plan administrator would be required to furnish.[4] I nevertheless find that Galman's complaint fails to state a claim under 29 U.S.C. § 1132(c)(1).

To begin with, Section 1132(c)(1) creates liability only for an "administrator." Galman has not sued the plan administrator. ERISA defines a plan administrator as the person so designated by the plan documents, the plan sponsor, or such other person as the Secretary of Labor may prescribe. 29 U.S.C. § 1002(16)(A). The complaint does not allege that any of the defendants is such a person. (According to defendants, the plan administrator is Sysco Corporation, which is not a party to this action. (Mot. 22))

There is another deficiency. To give rise to ERISA liability for nondisclosure, any request for information would need to have been in writing. ERISA requires plans to provide participants with a "pension benefit statement ... upon written request." 29 U.S.C. 1025(a)(1). Galman never alleges that he made a written request for this information. Other courts have dismissed complaints that failed to allege that a request was made in writing. *See Brown,*

---

[4]     The statute does not explicitly state that a pension benefit statement must include the projected amount of a lump sum payment option.

> A pension benefit statement under paragraph (1)—
> (i) shall indicate, on the basis of the latest available information—
>     (I) the total benefits accrued, and
>     (II) the nonforfeitable pension benefits, if any, which have accrued, or the earliest date on which benefits will become nonforfeitable,
> (ii) shall include an explanation of any permitted disparity under section 401 (l) of title 26 or any floor-offset arrangement that may be applied in determining any accrued benefits described in clause (i),
> (iii) shall be written in a manner calculated to be understood by the average plan participant, and
> (iv) may be delivered in written, electronic, or other appropriate form to the extent such form is reasonably accessible to the participant or beneficiary.

29 U.S.C. § 1025(a)(2)(A)

6

2014 WL 5410650, at *5; *D'Iorio v. Winebow, Inc.*, 920 F. Supp. 2d 313, 318 (E.D.N.Y. 2013). I will do the same.[5]

The First Count will therefore be dismissed insofar as it attempts to state a claim of violation of the ERISA statutory disclosure requirements under 29 U.S.C. § 1132(c)(1).

## B.    Breach of fiduciary duty

The First Count also alleges that the defendants' failure to provide Galman with the information he requested constituted a breach of the defendants' fiduciary duties. (Compl. ¶ 41).[6] To state a claim for breach of fiduciary duty under an ERISA plan, Galman must allege at least three elements: that the defendant was a fiduciary under the Plan, that the defendant breached a fiduciary duty, and that the breach harmed Galman. *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010). Galman's complaint does not establish the first or third of these elements.

To violate a fiduciary duty, a defendant must be a fiduciary. ERISA identifies three ways in which a person can be considered a fiduciary:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has

---

[5]    Galman's complaint does not allege that defendants failed to supply regular statements, which are due "at least once every 3 years." 29 U.S.C. § 1025(a)(1)(B). Galman does acknowledge that he received such a statement in 2008. (Compl. ¶ 33). The 2008 statement, according to Galman, disclosed the "amount of money he would receive if he chose to receive monthly payments" (Compl. ¶ 33), but did not state what the payment would be if he took the lump sum option.

[6]    I will assume *arguendo* that this is intended as an independent claim. As stated above, however, Galman seems to be alleging that the breach of fiduciary duty consisted of nothing more than a violation of ERISA's statutory disclosure requirements. I also observe that an allegation of fiduciary breach cannot simply be a means of ignoring the statute's explicit limitations on the scope of the plan administrator's duties.

any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

Furthermore, it is not enough for a plaintiff to demonstrate that a defendant was a fiduciary with respect to some aspect of the plan. A plaintiff must additionally prove that the individual was acting in a fiduciary capacity, that is, was performing a fiduciary function, when she took the action in question.

> Because an entity is only a fiduciary to the extent it possesses authority or discretionary control over the plan, we must ask whether the entity is a fiduciary with respect to the particular activity in question. In every case charging breach of ERISA fiduciary duty, then, the threshold question is not  whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.

*Renfro v. Unisys Corp.*, 671 F.3d 314, 321-22 (3d Cir. 2011) (internal quotations and citations omitted).

Galman has presented no facts from which the Court could infer that any of the three defendants was a fiduciary. Still less has he suggested that any of the defendants was acting in a fiduciary capacity in responding, or not, to his request for information. To the extent the complaint states or implies that defendants were fiduciaries, these are not facts but mere legal conclusions, which the reviewing court may disregard. *See Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73.

Defendant Sysco, for example, is not alleged to possess any discretion (or indeed any function at all) with respect to the management and administration of the Plan, or the investment of its assets. Nothing in the Complaint indicates that Sysco was a fiduciary.

Defendant Shelly Budhar is likewise not alleged to be a fiduciary. She was a Sysco employee—specifically, a manager in its Human Resources

department. It appears that she conducted an informational meeting at which employees were told about the pension plan. The complaint alleges that Budhar was the person who received, and denied, Galman's request for information about his lump sum benefit and the method of its calculation. (Compl. ¶¶ 14, 16, 35).

Providing (or not providing) an employee with an estimate of retirement benefits does not imply fiduciary status. There is no indication, for example, that Budhar possessed the discretion to construe the provisions of the plan and decide whether an employee qualified for certain benefits. *See Kenseth*, 610 F.3d at 65. There is no indication that Budhar had any discretionary authority or control over the management, disposition, or investment of the assets.

Judging from the face of the complaint, Budhar's role was to obtain information about the calculation of Galman's benefits and relay that information to him. The Department of Labor has explained that a person who performs only ministerial functions, without exercising decision-making power, is not a fiduciary under ERISA. Specifically, an individual who performs the "calculation of benefits," the "preparation of reports concerning participants' benefits," the "processing of claims," and the "calculation of services and compensation credits for benefits," is a person who performs "purely ministerial function" and is therefore not a fiduciary with respect to the Plan. 29 C.F.R. § 2509.75-8(D-2). The complaint provides no information about Budhar's responsibilities from which a court could infer fiduciary status.

Finally, the Fund itself is not factually alleged to be a fiduciary. The Fund, for all that appears in the complaint, was just that—a fund. All of the discretion to invest the contributions, administer the plan, distribute benefits, or perform any of the functions that might give rise to fiduciary status, were likely at the discretion of other entities, such as the Plan administrator. The complaint does not state where such discretionary power lies, and the Court will not infer, on its own, that the Fund possessed such power.

All of the above, of course, may be just another way of saying that Galman has failed to sue the plan administrator. A plan administrator would generally be considered a fiduciary.

The First Count of the Complaint will therefore be dismissed without prejudice to the submission of a proposed amended complaint within 30 days.

## II.    Second Count - Discrimination under the NJLAD

Count 2 of the complaint alleges racial discrimination under the New Jersey Law Against Discrimination, N.J. STAT. ANN. § 10:5-1 *et seq.* ("NJLAD"). Galman, who is African-American, seemingly attributes defendants' failure to furnish benefits information, discussed above, to racial discrimination. (*See* Compl. ¶¶ 52-54) He alleges that two Caucasian employees were paid more in pension benefits than African-American employees were. (Compl. ¶ 26). He also alleges that the Caucasian retirees were "given an honorable mention" and had "their pictures and stories" placed in the company newsletter, forms of recognition that Galman did not receive upon his retirement. (Compl. ¶¶ 48-50).

### A.    Failure to furnish pension benefit information

As discussed above, Count 1 of the complaint asserts that defendants failed to furnish Galman with required information about his retirement benefits. Similar allegations are repeated under Count 2.

If this is intended as an independent claim, it does not meet the minimal standards of specificity and plausibility imposed by *Twombly* and *Iqbal. See* p. 3, *supra.* No facts, other than the racial makeup of management and the work force, are stated in support. Galman does not explicitly even allege that he was denied this information on a racial basis. Still less does he provide any factual support for such a conclusion.

Count 2 will therefore be dismissed to the extent that defendants' failure to disclose may have been intended as an independent NJLAD claim.

10

## B.       Racial disparity in pension benefits

I next address Galman's claim under the NJLAD that Sysco paid pension benefits on a racially discriminatory basis.

Federal pleading standards require that the complaint contain, not mere conclusions, but facts sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see* p. 3, *supra.* To state a claim for relief under the NJLAD, a plaintiff must allege three elements: "1) plaintiff belongs to a protected class; (2) she was performing her job at a level that met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) others not within the protected class did not suffer similar adverse employment actions." *El-Sioufi v. St. Peter's Univ. Hosp.*, 887 A.2d 1170, 1182 (N.J. App. Div. 2005). [7]

The factual allegations of this Complaint do not sufficiently set forth a plausible NJLAD claim. Count 2 alleges that "Caucasian employees were given larger lump sum pension payments as compared to those payments received by African-American employees despite years of service being the same or similar." (Compl. ¶ 57) No further details are given.

Galman offers no direct evidence of discrimination. Rather, he suggests that discrimination may be inferred from a comparison: Caucasian retirees received higher lump sum payments than African-American retirees.

To say that some retirees received more than others falls far short of a plausible discrimination claim. To push such an allegation across the line to plausibility, the plaintiff must at least allege factually that the two groups of

---

[7]      Liability under the NJLAD may only be imposed against an employer. *Cicchetti v. Morris Cnty. Sheriff's Office*, 947 A.2d 626, 645 (N.J. 2008). Individual employees and supervisors are not "employers" under the LAD, and their liability may arise, if at all, only through the "aiding and abetting" mechanism of the LAD statute. *Id.* To prove an employee liable as an aider and abettor, Plaintiff must show: (1) the employer whom the defendant aided performed a wrongful act causing an injury; (2) the defendant was generally aware of his role as part of an overall illegal or tortious activity at the time that he provided the assistance; and (3) the defendant knowingly and substantially assisted the principal violation. *Id.*; *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999) (defining aiding and abetting liability). Plaintiff should consider these principles if he submits an amended complaint.

employees were similarly situated but for their race. It is true, of course, that there is "no bright-line rule for determining who is a 'similarly situated' employee." *Jones v. Showboat Hotel & Casino*, 329 N.J. Super. 295, 305 (App. Div. 2000); *see also Peper v. Princeton Univ. Bd. Of Trs.*, 77 N.J. 55, 85 (1978). But to get past a Rule 12(b)(6) motion, a complaint must allege *some* facts to suggest the groups were similarly situated.

The complaint alleges one such fact: that the two groups of employees had "years of service [that were] the same or similar." (Compl. ¶ 57) That is not enough; the warehouseman and the CEO may have worked the same number of years, but we would not say that their differing retirement packages bespeak discrimination. The Complaint does not allege that the Caucasian and African-American employees worked similar jobs, at similar salaries. It gives no names, places, dates, or dollar amounts. Indeed it does not explicitly allege that they all were under the same pension plan. In his opposition brief, Galman attempts to remedy some of the deficiencies of the Complaint, but such statements are not properly considered on a Rule 12(b)(6) motion. *See Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007) ("we do not consider after-the-fact allegations in determining the sufficiency of [a plaintiff's] complaint under Rules 9(b) and 12(b)(6)").

This component of Count 2 will be dismissed as well.

### C.    Failure to accord recognition upon retirement

Finally, Count 2 alleges that Sysco failed to "recognize" Galman in the same way it recognized Caucasian employees who retired at the same time. Allegedly, Caucasian employees "with the same years of service [as Galman] were given honorable mention when they retired," and had their "pictures and stories" included in a Sysco newsletter. (Compl. ¶ 48-49). Galman, in contrast, received neither of those forms of recognition when he retired. (Comp. ¶ 50). These allegations do not state a claim under NJLAD because they do not describe "adverse employment actions."

12

As noted above, a claim for relief under the NJLAD requires, *inter alia,* an "adverse employment action." *El-Sioufi.* 887 A.2d at 1182. That element is interpreted in light of NJLAD's provision that it is illegal "to discriminate...in compensation or in terms, conditions or privileges of employment." N.J. Stat. Ann. § 10:5-12(a). Such an adverse action, then, may fall short of firing. On the other hand, the courts have held that unfavorable job evaluations or reassignments did not rise to the level of adverse employment actions. *El-Sioufi,* 887 A.2d at 1184.

New Jersey courts interpreting NJLAD have looked to decisions interpreting the Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. § 34:19-1 *et seq. See Victor v. State,* 952 A.2d 493, 504-05 (N.J. App. Div. 2008). To be actionable under CEPA, an employment action must be "sufficiently severe or pervasive to have altered the plaintiff's conditions of employment in an important and material manner." *Id.* at 505. That definition might include a "withdrawal of benefits formerly provided to an employee," but it does not encompass actions which only "result in a bruised ego or injured pride on the part of the employee." *Id.* Applying this case law to the NJLAD, New Jersey courts have concluded that "an employer's adverse employment action must rise above something that makes an employee unhappy, resentful or otherwise cause an incidental workplace dissatisfaction... [but] noneconomic actions that cause a significant, non-temporary adverse change in employment status or the terms and conditions of employment would suffice." *Id.*

For sure, to recognize a long-term employee would be the decent thing to do. But Galman has made no allegation that Sysco's failure to recognize him upon his retirement caused a "significant, non-temporary adverse change in employment status or the terms and conditions of employment." He has made no statement about how (if at all) these acts affected him psychologically; how they affected his job; or how they caused him any damage beyond resentment and dissatisfaction.

13

Finally, these forms of recognition would seem to be incidents of retirement, not employment. They would have occurred when Galman was on his way out of the door, if not already retired. Failure to accord him recognition as a retiree did not alter his conditions of employment.

To the extent that the Second Count asserts a claim of discrimination on the basis of Sysco's failure to recognize Galman, it will be dismissed.

### D.    Preemption

All of Count 2, then, will be dismissed without prejudice for failure to state a claim. *See* Sections II.A, B & C, *supra*. Consequently, I do not reach the alternative ground of ERISA preemption. Plaintiff may wish to consider the possibility of preemption, however, in framing any amended complaint.

ERISA will generally preempt a state law claim that "relates to" an ERISA plan. 29 U.S.C. § 1144(a). However, ERISA contains a saving clause providing that it will not preempt a state law claim where doing so would impair a federal law. 29 U.S.C. § 1144(d). Preempting a claim of discrimination can potentially interfere with Title VII of the Civil Rights Act, 42 U.S.C. § 2000D et seq. The issue may depend on whether Galman has invoked administrative remedies, an issue as to which the complaint is silent. *See generally Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 101-02 (1983).

### Conclusion

Pursuant to Rule 12(b)(6), Fed. R. Civ. P., Galman's complaint is dismissed. Because this is the first order of dismissal, and because many of the grounds are matters of pleading under *Twombly/Iqbal*, this dismissal is without prejudice to the submission of a proposed amended complaint within 30 days after the filing of this Opinion and the accompanying Order.

Dated April 8, 2015
Newark, New Jersey

KEVIN MCNULTY
United States District Judge

14