UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIEL GALMAN, JR., <br><br> Plaintiff, <br><br> v. <br><br> SYSCO FOOD SERVICES OF METRO NEW YORK, LLC; SYSCO CORPORATION RETIREMENT FUND; SHELLY BUDHAR, JOHN DOES 1-10; JANE DOES 1-10; and ABC CORPORATIONS A THROUGH Z, SYSCO CORPORATION, <br><br> Defendants. | Civ. No. 13-7800 (KM)(MAH) <br><br> OPINION |

The plaintiff, Daniel Galman, Jr., participated in his employer's retirement plan. Before he retired, Galman asked the employer's human resources manager to give him an estimate of the lump sum pension benefit he would receive upon his retirement. The employer allegedly failed to provide that estimate. Galman, who is African American, says he later learned that certain Caucasian retirees received higher lump sum pension payments than he did.

Galman filed this action against his employer, his employer's retirement fund, and a human resources manager, alleging breach of fiduciary duties and racial discrimination. I granted a motion to dismiss the original complaint without prejudice to the submission of an amended complaint that remedied the deficiencies of the first. An essential problem with the ERISA claim in the first complaint was that it did not name the Plan Administrator. Galman has now done so: Sysco Corporation, the Plan Administrator, is newly named as a

1

defendant in the First Amended Complaint. ("1AC", ECF no. 34-1) Other allegations are added as well.

All defendants have now filed motions to dismiss the 1AC. (ECF nos. 35, 44) For the reasons expressed herein, the motions will be granted.

## Background

For purposes of this motion to dismiss, the factual allegations of the 1AC are assumed to be true.

Galman worked for 30 years as a warehouseman for Sysco Food Services of Metro New York, LLC ("Sysco"), and its predecessor. (1AC ¶ 13) He contributed to the Sysco Corporation Retirement Fund (the "Fund"), as well as a predecessor union fund. (1AC ¶ 33). The Fund was controlled by the Sysco Corporation Retirement Plan (the "Plan").

In 2012, Galman "requested information about what his lump sum retirement payment would be." (1AC ¶ 34). Galman also inquired about a 6% penalty that had been assessed against employee accounts. (1AC ¶¶ 19–27). He made those requests for information primarily by telephone calls to defendant Shelly Budhar, a human resources manager. His counsel also sent a letter to Anita Foster at Sysco Corp. on March 25, 2013. Budhar and Sysco did not furnish him with the information he requested. (1AC ¶ 27, 41–45).

Galman retired on September 24, 2012. (1AC ¶ 38) He received his lump sum pension check in December 2012 (1AC ¶ 39).

After he retired, Galman somehow "learned that two Caucasian employees with similar service to Sysco as he had received substantially higher amounts of money in their pension lump sum payments." (1AC ¶ 28).

Galman "viewed Sysco Corp. as a fiduciary of his pension plan" because it exercised management and discretionary authority over the plan. (1AC ¶ 46) He makes the same allegation as to defendant Budhar. (1AC ¶ 50)

Count 1 alleges that Sysco Corp. as plan administrator and Budhar breached their fiduciary duties under ERISA, 29 U.S.C. § 1025(a)(1)(A) and (B)(2) that they did not, in response to a written request, provide required

information to him. Galman seeks a statutory penalty of $100 per day under 29 U.S.C. § 1132(c).

Count 2 alleges racial discrimination in violation of the New Jersey Law against Discrimination (NJLAD). It states that Galman is African American; that management was Caucasian; and that Galman was a well-regarded employee for 30 years. After retirement, however, Galman allegedly received a smaller lump sum payment than Caucasian employees (a "Mr. Bylick" and a "Mr. Janowski") and did not receive recognition in the company newsletter.

The defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011).

From the seminal modern cases of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Third Circuit has extracted a three-step process for reviewing a complaint:

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps. First, we outline the elements a plaintiff must plead to a state a claim for relief. See [*Iqbal*, 556 U.S.] at 675; *Argueta*, 643 F.3d at 73. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. See *Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

*Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). The complaint's allegations must be factual, not conclusory, and they must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

3

## Discussion

I. **Count 1: "Breach of the Fiduciary Duty by Violation of the Employee Retirement Income Security Act"**

In Count 1, the underlying grievance is alleged clearly enough: Galman requested important information about his retirement benefits, but the defendants failed to provide it. The claim is one for breach of the statutory obligation under ERISA to supply certain information to plan participants. *See* 29 U.S.C. §§ 1132(c)(1), 1025(a).

A. **Failure to supply information – Sysco Corporation**

Section 502 of ERISA provides for a private cause of action where a plan administrator fails to supply beneficiaries with certain required information:

> (1) Any administrator (A) who fails to meet the requirements of … section 1025(a) of this title with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1). The request must be in writing. *See* ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4); *Brown v. Sysco Food Servs. of Metro New York LLC*, No. 14-474, 2014 WL 5410650, at *5 (D.N.J. Oct. 21, 2014), *app. dismissed*; *D'Iorio v. Winebow, Inc.*, 920 F. Supp. 2d 313, 318 (E.D.N.Y. 2013). A plan administrator who fails to provide the information within 30 days is subject to a penalty of $100 per day, at the discretion of the court. 29 U.S.C. § 1132.

Unlike the original complaint, this First Amended Complaint does name the plan administrator, Sysco Corporation, as a defendant.[1] And it does allege

---

1   Under ERISA, the plan "administrator," refers only to

that counsel sent a request that was written, in the form of a letter to "Anita Foster at the Sysco Corp. which was dated March 25, 2013" (the "Foster Letter"; *see* 1AC ¶44). It does not adequately allege, however, that the Plan Administrator omitted any information that would expose it to the claimed $100/day penalty.

First, Section 502, quoted above, penalizes a plan administrator who "fails to meet the requirements of ... section 1025(a)." 29 U.S.C. § 1132(c). Section 1025(a), in turn, requires an administrator to "furnish a pension benefit statement" to a plan participant or beneficiary every three years, or upon written request.² The complaint does not allege that the Plan

---

> (i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A).

Sysco Corporation acknowledges that it is the plan administrator. It is designated as such in the Plan. (*See* ECF no. 44-2, Plan § 1.41).

² Galman's plan is a defined benefit plan, subject to subsection (1)(B):

> (B) Defined benefit plan
>
> The administrator of a defined benefit plan (other than a one-participant retirement plan described in section 1021 (i)(8)(B) of this title) shall furnish a pension benefit statement—
>
> (i) at least once every 3 years to each participant with a nonforfeitable accrued benefit and who is employed by the employer maintaining the plan at the time the statement is to be furnished, and
>
> (ii) to a participant or beneficiary of the plan upon written request.

29 U.S.C. § 1025(a).

Galman does acknowledge that he received a regular pension benefit statement in 2008, but says it did not include a calculation of the lump sum option. The statute does not explicitly require that a pension benefit statement include the projected amount of a lump sum payment option:

> A pension benefit statement under paragraph (1)—
>
> (i) shall indicate, on the basis of the latest available information—
>
>> (I) the total benefits accrued, and

5

Administrator failed to furnish regular benefits statements every three years. And the "written request," *i.e.,* the Foster Letter, did not request a pension benefit statement; it requested other varieties of detailed information. *See infra.*

Second, section 502 penalizes a plan administrator "who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish." The relevant section of "this subchapter" (*i.e.,* subchapter I of ERISA, 29 U.S.C. §§ 1001-1145) requires the plan administrator to provide copies of "the latest updated summary plan description ... or other instruments under which the plan is established or operated." ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4).

The Complaint states that the Foster Letter was a "detailed letter." (1AC ¶ 44; a copy is attached to plaintiff's brief as ECF no. 42-2) Galman faults Sysco Corporation, or Foster, for failing to provide "the requested information about Plaintiff's pension lump sum payment, the calculation of the lump sum payment, the interest rate applied and no information was forthcoming about the assessment of a 6% penalty to Plaintiff's pension." (1AC ¶ 45) It alleges that he requested assistance from "the New York office of ERISA," but their response was delayed. (1AC ¶ 46)

Then the Complaint alleges that "[w]hen Plaintiff received the retirement paperwork, it came from personnel at Sysco Corp. and included details of what he would received [*sic*] per the lump sum amount which was Part A of the

---

        (II) the nonforfeitable pension benefits, if any, which have accrued, or the earliest date on which benefits will become nonforfeitable,

    (ii) shall include an explanation of any permitted disparity under section 401 (l) of title 26 or any floor-offset arrangement that may be applied in determining any accrued benefits described in clause (i),

    (iii) shall be written in a manner calculated to be understood by the average plan participant, and

    (iv) may be delivered in written, electronic, or other appropriate form to the extent such form is reasonably accessible to the participant or beneficiary.

29 U.S.C. § 1025(a)(2)(A).

pension and what he would receive monthly per Part B of the pension." (1AC ¶ 48)

The gripe at this point may be that the disclosure was not nonexistent, but only late (*i.e.*, beyond the 30-day deadline). Galman acknowledges receiving "details" regarding the lump sum payment and the monthly benefit amount. It is difficult to tell from the Complaint what was allegedly missing from Sysco Corporation's disclosures, if anything.

The Foster Letter, cited and relied upon in the First Amended Complaint,[3] recites that Galman had already been informed that his "Part A" lump sum benefit would be $600,644, and that, pursuant to his election, he would receive a monthly "Part B" payment as well. The Foster Letter requests "detailed information on how the lump sum figure provided to him was arrive at." It asks for "actuarial reports" underlying the original calculation in 2008,

---

[3] Because the letter is cited in, relied upon by, and integral to the First Amended Complaint, it is properly considered on a motion to dismiss without converting it to one for summary judgment. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'") (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Indeed, where, as here, a complaint is based on a particular document, a defendant may submit and rely on that document in its motion to dismiss. The reasons for the rule are (1) that the plaintiff, having relied on the document, cannot claim unfair surprise; and (2) the plaintiff cannot base a claim on a document while shielding the document itself from view:

> What the rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent.

*Burlington*, 114 F.3d at 1426 (on 12(b)(6) motion to dismiss securities fraud complaint alleging misstatements in annual report, court may examine the report itself).

Plaintiff's counsel attached a copy of the letter to her brief, without a sponsoring affidavit. (ECF no. 42-2) At my clerk's request, defense counsel filed an authenticated copy. (ECF no. 51)

7

as well as subsequent actuarial reports. The letter requests "all information which details where the pension was invested, the interest rate which accrued on the pension money and the formula used to calculate [Galman's] pension pay out amount." (ECF no. 44-2 at 1)

The information requested in the Foster Letter, even if not supplied (and it appears that at least some of it was), cannot support a claim for penalties under ERISA section 502, 29 U.S.C. § 1132. The Letter requests information far beyond what is required to be disclosed by ERISA § 104(b)(4). And it is only failure to provide that basic information that gives rise to a claim for penalties.

Detailed information, such as actuarial reports, investment information, and formulas, goes well beyond the scope of the Section 104(b)(4) disclosure obligations:

> Since actuarial valuation reports are not mentioned in [§ 1024(b)(4)], are not required to be reproduced within any of the documents that that section does mention, are not sources of data that plan administrators are required to use, and are not sources of the rights or obligations of any of the participants, beneficiaries, or fiduciaries, we conclude that actuarial valuation reports are not within the scope of [§ 1024(b)(4)]. Though such reports doubtless contain information that plan participants might find interesting or useful, ... [§ 1024(b)(4)] is not sufficiently broad to require disclosure of any and all documents that would assist participants and beneficiaries in determining their rights under a plan and in determining whether a plan is being properly administered.

*Board of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 145 (2d Cir. 1997) (internal citations omitted).

Now it may be that Galman is entitled, by statute or regulation, to obtain such information from the plan administrator or the plan itself.[4] That is a separate issue. Galman sues for the statutory penalty, and that penalty applies

---

[4] *E.g.*, ERISA § 503, 29 U.S.C. § 1133 (requiring the "plan," not the administrator, to provide certain information in connection with denial of a claim); 29 C.F.R. § 2560.503-1(h)(2)(iii) (regulation under ERISA § 503, requiring disclosure of documents relied upon in making a benefit determination). Section 503 does not create an independent right of action. *Cohen v. Horzon Blue Cross Blue Shield of New Jersey*, No. 2:13-cv-03057, 2013 WL 5780815, at *9 (D.N.J. Oct. 25, 2013).

8

only to nondisclosure of the basic information described in ERISA §§ 104 and 502, quoted above. *See Groves v. Modifie Retirement Plan,* 803 F.2d 109, 113 (3d Cir. 1986) ("because § 502(c) authorizes sanctions only for failure to perform duties imposed by 'this subchapter,' ... sanctions may not be imposed on a plan administrator for his failure to fulfill obligations imposed only by regulations promulgated pursuant to ERISA.")

For all these reasons, the motion of Sysco Corporation to dismiss Count 1 is granted.

### B. Failure to supply information – other defendants

As to the remaining defendants— Sysco Food Services of Metro New York, LLC, Sysco Corporation Retirement Fund, and Shelly Budhar—Galman has not sufficiently remedied the defects that caused me to dismiss the original complaint. And as to them, Count 1 also suffers from the defects that caused me to dismiss it as to Sysco Corporation. *See* Section I.A, *supra.* As to these three, the motion to dismiss Count 1 of the First Amended Complaint will be granted.

First, as noted in my prior opinion, ERISA Section 502(c), 29 U.S.C. § 1132(c), creates liability only for an "administrator." *See Cohen v. Horzon Blue Cross Blue Shield of New Jersey,* No. 2:13-cv-03057, 2013 WL 5780815, at *9 (D.N.J. Oct. 25, 2013) ("As [defendant] is not the administrator, it cannot be held liable" for § 502(c) claim). ERISA defines a plan administrator as the person so designated by the plan documents, the plan sponsor, or such other person as the Secretary of Labor may prescribe. 29 U.S.C. § 1002(16)(A); *see* n.1, *supra.* These three defendants, as I held in my prior opinion, do not fit that description. The allegations in the amended complaint that Galman considered some or all of these defendants to be fiduciaries adds nothing to his statutory claim.

Second, as noted in my prior opinion, none of these defendants received a request for information in writing. The Amended Complaint adds an

9

allegation that counsel sent the Foster Letter to Sysco Corporation. It says nothing about written requests to any of these three defendants. So the prior holding stands.

Finally, Count 1 must be dismissed for the reasons given in the preceding section. I found it lacking even as asserted against a plan administrator; *a fortiori* these defendants, who are not plan administrators, had no duty to supply these documents.

The First Count will therefore be dismissed in its entirety insofar as it attempts to state a claim of violation of the ERISA statutory disclosure requirements under 29 U.S.C. § 1132(c)(1).[5]

## II.   Count 2: "Discrimination Based on Race in Violation of the New Jersey Law Against Discrimination" (NJLAD)

### A.   Failure to state a claim

Count 2 of the complaint alleges racial discrimination under the New Jersey Law Against Discrimination, N.J. STAT. ANN. § 10:5-1 *et seq.* ("NJLAD"). Galman, who is African-American, attributes defendants' failure to furnish

---

[5]   In my prior opinion (ECF no. 32 at 7–10), I indulged the assumption that Galman may have intended to assert an independent claim of breach of fiduciary duty. The assumption is probably too generous; Count 1 is titled "Breach of the Fiduciary Duty by violation of the Employee Retirement Income Security Act." (Emphasis added.) The complaint alleges that Sysco Corporation and Budhar "breached their fiduciary duties by failing to provide information that [Galman] requested in writing within thirty days of receipt of his written request which is required per 29 U.S.C. Section 1025(a)(1)(A)(B)(ii)." (1AC ¶ 52) That is, the fiduciary breach *consists of* and is coterminous with the alleged statutory violation, discussed above.

At any rate, the fiduciary allegations in the amended complaint do not remedy the defects identified in my prior opinion dismissing the original complaint. The 1AC adds only boilerplate assertions that Galman "viewed" certain defendants as fiduciaries, stating in conclusory fashion that Budnar or Sysco Corporation exercised control and discretion over the Plan. (1AC ¶ 50) These legal conclusions, without supporting facts, can be set aside on a motion to dismiss. They are belied by the Plan itself. (*See* ECF no. 44-2, Plan §§ 13.01, 13.02, 1.12, 1.03)(vesting discretion in the Administrative Committee). And it is not inherently plausible that Budhar, a manager in Sysco's HR department, was a plan fiduciary. There are other legal defects in the fiduciary claim. As to them, I incorporate the discussion in my earlier opinion. (ECF no. 32 at 7–10)

10

benefits information, discussed above, to racial discrimination. He alleges that some Caucasian employees with equal years of service were paid more in pension benefits than he was. He also alleges that the Caucasian retirees were "given an honorable mention" and had "their pictures and stories" placed in the company newsletter, forms of recognition that Galman did not receive after he retired.

For the reasons expressed in my earlier opinion, I dismiss any claim that the alleged failure to provide benefits information was discriminatory. (ECF no. 32 at 10) The First Amended Complaint supplies no more factual support.

I next address Galman's claim under the NJLAD that Sysco paid pension benefits on a racially discriminatory basis.

Federal pleading standards require that the complaint contain, not mere conclusions, but facts sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see* p. 3, *supra*. To state a claim for relief under the NJLAD, a plaintiff must allege three elements: "1) plaintiff belongs to a protected class; (2) she was performing her job at a level that met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) others not within the protected class did not suffer similar adverse employment actions." *El-Sioufi v. St. Peter's Univ. Hosp.*, 887 A.2d 1170, 1182 (N.J. App. Div. 2005). [6]

I dismissed Count 2 of the original complaint for failure to state a claim. (*See* ECF no. 32 at 11–14) That discussion is incorporated by reference and will not be repeated here; this discussion should be read as a supplement. The

---

[6] Liability under the NJLAD may only be imposed against an employer. *Cicchetti v. Morris Cnty. Sheriff's Office*, 947 A.2d 626, 645 (N.J. 2008). Individual employees and supervisors are not "employers" under the LAD, and their liability may arise, if at all, only through the "aiding and abetting" mechanism of the LAD statute. *Id.* To prove an employee liable as an aider and abettor, Plaintiff must show: (1) the employer whom the defendant aided performed a wrongful act causing an injury; (2) the defendant was generally aware of his role as part of an overall illegal or tortious activity at the time that he provided the assistance; and (3) the defendant knowingly and substantially assisted the principal violation. *Id.*; *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999) (defining aiding and abetting liability).

11

Amended Complaint adds a few allegations, but these remain insufficient to make out a claim of discrimination.

It is not enough simply to state that two Caucasian employees got higher lump sum distributions. No facts pertinent to discrimination, other than the racial identities of the participants, are pleaded. Galman points to no racial remarks or other evidence of animus or discrimination. He does not allege with any specificity that his lump sum calculation, which should be a matter of simple calculation, was manipulated or erroneous.

Most pertinently, the mere fact that one employee's lump sum distribution was higher than another's does not give rise to an inference of discrimination. There is no factual allegation that they were similarly situated. Relevant individual factors include age at retirement (Galman was apparently only 50, and therefore subject to a reduction); annuity elections and levels of contribution; and so on.

It is true, of course, that there is "no bright-line rule for determining who is a 'similarly situated' employee." *Jones v. Showboat Hotel & Casino,* 329 N.J. Super. 295, 305 (App. Div. 2000); *see also Peper v. Princeton Univ. Bd. Of Trs.,* 77 N.J. 55, 85 (1978). But to get past a Rule 12(b)(6) motion, a complaint must allege *some* facts raising a plausible inference that the groups were similarly situated.

This component of Count 2 will be dismissed for failure to state a claim as well.

### B.  Preemption

Finally, defendants argue that any state NJLAD claim is preempted by ERISA. Because dismissal is appropriate based on the factors discussed above, I will discuss this alternative basis for dismissal only briefly.

The scope of statutory preemption is broad: ERISA shall "supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The purpose of the preemption is to keep regulation of employee benefit plans both federal and uniform. Thus "any state-

law cause of action that duplicates, supplements, or supplants, the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Aetna Health inc. v. Davila,* 542 U.S. 200, 208, 124 S. Ct. 2488, 2495 (2004).

The term "State law" includes "all laws, decisions, rules, regulations, or other State action having the effect of law." 29 U.S.C. § 1144(c)(1). A state law that "relates to" an ERISA plan may include a state anti-discrimination law. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S. Ct. 2899–2900 (1983) (New York anti-discrimination statute). Thus a claim under NJLAD that a pension plan discriminated on the basis of age has been held to be preempted. *Alston v. Atl. Elec. Co.*, 962 F. Supp. 616, 624–25 (D.N.J. 1997); *Hailey v. AGL Res., Inc.*, No. 07-2352, 2008 WL 482331, at *4 (D.N.J. Feb. 19, 2008).

The claim here is directed straight at Sysco Corporation's administration of the Plan. Even if it survived the rest of defendants' 12(b)(6) motions, it would have to be dismissed because it is preempted.[7]

---

[7] ERISA does contain a saving clause providing that it will not preempt a state law claim where doing so would impair a federal law. 29 U.S.C. § 1144(d). Preempting a claim of discrimination, for example, might have the collateral consequence of impairing a claim under Title VII of the Civil Rights Act. No such danger is posed here. Despite my flagging of the issue in my prior opinion (ECF no. 32), Galman has not indicated that he has filed or intends to file a federal antidiscrimination claim. Nor does he indicate that he has fulfilled the prerequisite of exhausting administrative remedies. In such a case, a state antidiscrimination claim gives rights not available federally; it follows that to preempt it would not interfere with any federal right. *See Alston,* 962 F. Supp. at 625. Indeed, Judge Linares has dismissed a parallel claim brought against Sysco on just this basis. *Brown v. Sysco Food Servs. of Metro New York LLC*, No. 14-474, 2014 WL 5410650, at *4 (D.N.J. Oct. 21, 2014), *app. dismissed.*

## Conclusion

Pursuant to Rule 12(b)(6), Fed. R. Civ. P., Galman's First Amended Complaint is dismissed. Because this is his second attempt to plead a cause of action, filed after I gave specific guidance in my earlier opinion, I find that further amendment would be futile. This time, dismissal is with prejudice. An appropriate order accompanies this opinion.

Dated March 16, 2016
Newark, New Jersey

_____
KEVIN MCNULTY
United States District Judge